

IN THE

# Court of Appeals of Indiana

BioConvergence LLC and Alisa K. Wright,

*Appellants-Defendants / Counterclaim-Plaintiffs*

v.

Kathryn S. Eddy,

*Appellee-Plaintiff / Counterclaim-Defendant*



FILED

Sep 24 2025, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

September 24, 2025

Court of Appeals Case No.
24A-PL-2291

Appeal from the Marion Superior Court

The Honorable Heather A. Welch, Senior Judge

Trial Court Cause No.
49D01-1211-PL-45456

---

**Opinion by Judge Mathias**
Judges May and Bradford concur.

**Mathias, Judge.**

[1] BioConvergence, LLC ("BioC") and Alisa K. Wright appeal the trial court's orders on attorneys' fees in favor of Kathryn S. Eddy. We affirm and remand with instructions.

## Facts and Procedural History

[2] This dispute between the parties has been ongoing since 2012. As we summarized in a prior appeal:

> This case involves a plethora of discovery disputes, violations, requests for contempt findings and sanctions, and gamesmanship that ensued after the employer-employee relationship of the parties soured. The relevant facts are as follows: Wright is the majority owner and chief executive officer of BioC, headquartered in Bloomington, Indiana. Wright's ex-husband, Lance, was BioC's chief operating officer. In 2004, Eddy contracted to provide consulting advice to BioC and, in 2006, Eddy began serving on BioC's board of advisors.
>
> In December 2010 or January 2011, Eddy purchased 371.429 ownership shares of BioC for $52,000.00, or $140.00 per share, the unit price that was designated by [BioC and Wright] and approved by BioC's accounting firm. In March 2011, Eddy accepted a position as BioC's chief financial officer. That [f]all, [BioC and Wright] tasked Eddy with performing a new stock valuation. Eddy concluded that the unit price of the ownership shares should be $70.00; however, [BioC and Wright] elected to maintain the $140.00 unit price. In December 2011, Eddy bought seventy-one more ownership shares at the $140.00 unit price.
>
> In May 2012, [BioC and Wright] terminated Eddy's employment, which triggered BioC's option to repurchase Eddy's

ownership shares pursuant to BioC's operating agreement. In July 2012, [BioC and Wright] repurchased Eddy's ownership shares for $15.50 per share. On November 27, 2012, Eddy sued [BioC and Wright] for actual and constructive fraud; breach of contract; breach of fiduciary duty; criminal deception; defamation per se; defense and indemnification; specific performance; violations of the Indiana Uniform Securities Act; and willful misconduct and recklessness. On January 18, 2013, [BioC and Wright] counterclaimed for breach of contract; conversion; criminal deception; defamation; intentional infliction of emotional distress; and negligence.

*BioConvergence, LLC v. Eddy*, No. 18A-PL-1351, 2019 WL 2181187, at *1 (Ind. Ct. App. May 21, 2019) (mem.) (footnotes omitted), *trans. denied*.

[3] As relevant to the issues in this appeal, BioC operated in accordance with an Operating Agreement, which provided in part that BioC would indemnify its officers and members "against expenses (including attorney fees) actually and reasonably incurred . . . in connection" with that person's successful defense of "any claim, issue, or matter" related to that person's relationship with BioC. Appellants' App. Vol. 5, pp. 211-12. Further, Eddy's employment with BioC, which ended approximately six months before she filed her complaint, was in accordance with an Employment Agreement. The Employment Agreement provided in relevant part as follows:

> **Breach of Agreement and Remedies.** Employee acknowledges and agrees that *Employee's actual or threatened breach of this Agreement* may cause or threaten irreparable injury to the Company that cannot adequately be measured in money damages. The Company shall therefore be entitled to obtain injunctive relief *with respect to any such actual or threatened breach by*

*Employee* in addition to and not in lieu of any other available remedies. *Employee shall also pay* any and all costs, damages[,] and other expenses, including without limitation all attorneys' fees, witness fees[,] and other legal expenses which are *incurred by the Company in successfully enforcing this Agreement*. Employee further acknowledges and agrees that the existence of any claim or cause of action by Employee against the Company, whether or not predicated upon Employee's employment relationship with the Company, shall not relieve Employee of Employee's obligations under this Agreement.

Appellants' App. Vol. 90, p. 183 (emphases added).

[4] Eventually, the trial court entered default judgment for Eddy and against BioC and Wright on their counterclaims, which judgment this Court affirmed on appeal. Thereafter, Eddy sought to hold BioC to the indemnity provision of the Operating Agreement, and the trial court agreed that BioC had an obligation to indemnify Eddy for her costs spent in defending herself against the counterclaims as well as her attorneys' fees spent in seeking to hold BioC to the indemnity provision. Eddy later voluntarily dismissed her remaining claims against BioC and Wright with prejudice. BioC and Wright likewise sought to recover their attorneys' fees.

[5] After a lengthy evidentiary hearing, the trial court entered extensive findings of fact and conclusions thereon in which it awarded attorneys' fees to Eddy and denied the claim for fees brought by BioC and Wright. After BioC and Wright filed a motion to correct error, the trial court amended its findings and conclusions but kept the monetary bottom lines.

This appeal ensued.

## Standards of Review

BioC and Wright (hereafter referred to collectively as "BioC") appeal various orders of the trial court awarding attorneys' fees to Eddy and denying their claims for fees. According to our Supreme Court:

> [We] review[] an award of attorney's fees for an abuse of discretion. An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances or misinterprets the law. To make this determination, this Court reviews any findings of fact for clear error and any legal conclusions de novo. Where a trial court's decision involves an issue of statutory interpretation, the standard of review is de novo.

*Nardi v. King*, 253 N.E.3d 1098, 1103 (Ind. 2025) (citations and quotation marks omitted).

## Fees under the Operating Agreement

We initially address BioC's arguments on appeal that the trial court erred when it awarded both $832,578 and $259,963.50 in attorneys' fees to Eddy under the Operating Agreement. Section 13.2 of the Operating Agreement provides in relevant part as follows:

> To the extent that a Director, Officer[,] or Member has been successful, on the merits or otherwise, in the defense of any action, suit[,] or proceeding referred to in Section 13.1 [regarding lawsuits involving Officers or Members], or in the defense of any claim, issue[,] or matter therein, [BioC] shall indemnify such

person against expenses (including attorney fees) actually and reasonably incurred . . . in connection therewith. . . .

Appellants' App. Vol. 5, pp. 211-12.

[9] We first consider the trial court's award of $832,578 in attorneys' fees to Eddy. The court awarded this amount to Eddy on the ground that it was a reasonable assessment of Eddy's attorneys' fees spent in defending Eddy against BioC's counterclaims. BioC does not dispute that Eddy was entitled to some amount of attorneys' fees here; instead, it asserts that the $832,578 award is excessive. There is no dispute that Eddy had spent more than $1.5 million in total for her attorneys' fees by the time our Court's decision affirming the entry of default judgment on the counterclaims was certified.

[10] BioC asserts that the $832,578 award is excessive because that amount was arbitrarily determined. The trial court stated in its original order that that amount represented 40% of Eddy's total fees and expenses, which the trial court found to be a reasonable percentage on which to base its award. *See* Appellants' App. Vol. 96, p. 83. However, when BioC noted in its ensuing motion to correct error that the award amount was actually closer to 53% of Eddy's total fees and expenses, the trial court amended its judgment by striking the references to the 40% but keeping the amount of the award. *See* Appellants' App. Vol. 102, p. 34.

[11] BioC argues that the trial court's amendment following the motion to correct error is "self-contradicting" and demonstrates that the court's award to Eddy

was "arbitrary and unreasoned." Appellants' Br. at 39. We reject those assertions. The court's amended order simply corrected a math error and confirmed the award amount as reasonable under the facts and circumstances before the court.

[12] The burden thus remains on BioC to demonstrate that the $832,578 award was not within the facts and circumstances that were before the trial court. And, in its attempt to do that, BioC argues that each of the following line items from Eddy's fee invoices is unreasonable:

- Eddy's total allocation of costs to her defense against the counterclaims;
- Various fees Eddy claimed relating to the dissolution of marriage case between Wright and her husband and also a probate case involving Wright's husband;
- Whether certain expert fees were related to Eddy's claims or BioC's counterclaims;
- Eddy's allocation of all costs of a prior appeal to the counterclaims when the prior appeal issues also involved other claims;
- Fees relating to another cause of action that BioC asserts had no relationship to Eddy's defense against its counterclaims;
- Eddy's inclusion of certain deposition costs;
- Eddy's inclusion of certain secretarial fees; and
- Eddy's inclusion of costs relating to certain errata sheet changes.

[13] The trial court, however, expressly refused to engage in a line-by-line analysis of Eddy's fees. Instead, the court took a holistic approach and awarded the $832,578 to Eddy as a reasonable allocation of Eddy's total costs and also based on the "common set of facts in overlapping claims" between the parties. Appellants' App. Vol. 102, p. 36. Thus, even if BioC's line-by-line

disagreements with Eddy's costs had merit, BioC is unable to show that any errors in those costs mattered to the trial court's award of the $832,578 to Eddy. And the court's allocation is well within the facts and circumstances of Eddy's costs that were before the court. We therefore cannot say that the court's award of $832,578 to Eddy was an abuse of the court's discretion.

[14]     We thus turn to BioC's additional argument that Section 13.2 of the Operating Agreement did not authorize the additional award of $259,963.50 in attorneys' fees to Eddy. This amount in fees was based on Eddy's costs in pursuing her right to the $832,578 in fees. According to BioC, Section 13.2 permits a party to recover only her fees "in the defense" of an action and does not allow for "fees-on-fees." Appellants' Br. at 29-35.

[15]     We disagree. Section 13.2 is broadly written. It expressly requires BioC to indemnify a party for all expenses in that party's successful "defense of any claim, issue[,] or matter," which is not disputed applies to Eddy vis-à-vis BioC's counterclaims against her. Appellants' App. Vol. 5, pp. 211-12. And Section 13.2 further expressly requires BioC to indemnify Eddy for "expenses (including attorney fees) actually and reasonably incurred . . . *in connection therewith*." *Id.* at 212 (emphasis added).

[16]     The language "in connection therewith" means that BioC must indemnify Eddy for all of her costs, including her attorneys' fees, expended not just in her defense against BioC's counterclaims but also *in connection with* her defense, and her claim for the fees she incurred collecting her defense fees was a claim in

connection with her defense. Further, BioC's reading of Section 13.2 would render the "in connection therewith" language meaningless surplusage. We therefore reject BioC's argument that the trial court erred under Section 13.2 when it awarded an additional $259,963.50 in attorneys' fees to Eddy for her costs in pursuing her fee claim.

## Fees under the Employment Agreement

[17] BioC separately argues that the trial court abused its discretion when it declined to award BioC attorneys' fees under Paragraph 9 of Eddy's Employment Agreement with BioC. Again, that paragraph provides as follows:

> **Breach of Agreement and Remedies.** Employee acknowledges and agrees that *Employee's actual or threatened breach of this Agreement* may cause or threaten irreparable injury to the Company that cannot adequately be measured in money damages. The Company shall therefore be entitled to obtain injunctive relief *with respect to any such actual or threatened breach by Employee* in addition to and not in lieu of any other available remedies. *Employee shall also pay* any and all costs, damages[,] and other expenses, including without limitation all attorneys' fees, witness fees[,] and other legal expenses which are *incurred by the Company in successfully enforcing this Agreement.* Employee further acknowledges and agrees that the existence of any claim or cause of action by Employee against the Company, whether or not predicated upon Employee's employment relationship with the Company, shall not relieve Employee of Employee's obligations under this Agreement.

Appellants' App. Vol. 90, p. 183 (emphases added).

[18] BioC asserts that it is entitled to an award of attorneys' fees under Paragraph 9 because Eddy eventually agreed to dismiss her claims against BioC with prejudice. But that is not sufficient to invoke Paragraph 9. Paragraph 9 requires BioC to show that Eddy breached or threatened to breach her Employment Agreement, which, in turn, caused BioC to expend costs to enforce the agreement.

[19] Eddy's employment with BioC ended in May 2012, and she filed her complaint against BioC in November 2012. Thereafter, BioC filed its counterclaims against Eddy—which counterclaims Eddy successfully defended against. Nothing in the record supports the conclusion that Eddy's claims were the equivalent of a breach or threatened breach of her already terminated Employment Agreement or that Eddy in any other way breached or threatened to breach that agreement. BioC's arguments on this issue are not persuasive. Accordingly, we agree with the trial court that BioC failed to show that it was entitled to an award of attorneys' fees under Paragraph 9.

## Other Claims for Fees

[20] BioC also argues that the trial court should have awarded BioC attorneys' fees because Eddy's claims were all "in extreme bad faith" or otherwise "frivolous, groundless, [or] unreasonable." Appellants' Br. at 58-74. BioC had more than a decade to prove those assertions in the trial court and failed to do so. Indeed, the trial court here was thoroughly aware of this long-standing litigation and the parties' actions toward each other throughout the litigation. The trial court addressed the parties' respective claims for fees after a multi-day evidentiary

hearing and entered an amended order with extensive findings that gave the parties a detailed explanation of the trial court's rationale in its decision. All of BioC's arguments on this issue simply seek to relitigate its bad-faith claims on appeal by having our Court reweigh the evidence and substitute our judgment for the trial court's, which is contrary to our standard of review. We reject BioC's arguments accordingly.

## Evidentiary Challenges

BioC also argues that the trial court abused its discretion in declining to admit certain exhibits into evidence. But it is not enough for an appellant to argue error in the trial court's evidentiary decisions on appeal; the appellant must also show that the purported errors had a probable impact on the trial court's judgment. *See Hayko v. State*, 211 N.E.3d 483, 492 (Ind. 2023). BioC makes no argument supported by cogent reasoning that any of the alleged evidentiary errors rose to the level of reversible error. *See id.*; *see also* Ind. Appellate Rule 46(A)(8)(a). And, BioC's incomplete argument notwithstanding, we are confident that they did not.

## Remand for Additional Fees for Eddy is Appropriate

Finally, Eddy asks that we remand for an award of additional fees to her for her defense of this appeal. We agree with Eddy that BioC's obligation under the Operating Agreement to indemnify her for her costs in defending herself is an ongoing one, and we therefore remand with instructions for the trial court to

determine a reasonable amount of additional attorneys' fees to award Eddy for her defense of this appeal.

## Conclusion

[23] For all of these reasons, we affirm the trial court's orders on attorneys' fees and remand with instructions.

[24] Affirmed and remanded.

May, J., and Bradford, J., concur.

ATTORNEYS FOR APPELLANTS

Christopher C. Murray
Ogletree Deakins Nash Smoak & Stewart, P.C.
Indianapolis, Indiana

Robert L. Burkart
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Colin E. Flora
Pavlack Law, LLC
Indianapolis, Indiana

Jason M. Massaro
The Massaro Legal Group, LLC
Cicero, Indiana